IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DAVID MATSUURA, ET AL., | ) | CIVIL NO. 96-01180 SOM-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.I. du PONT DE NEMOURS AND COMPANY, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| FUKU-BONSAI, INC., ET AL., | ) | CIVIL NO. 97-00716 SOM-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.I. du PONT DE NEMOURS AND COMPANY, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| LIVING DESIGNS, INC., ET AL., | ) | CIVIL NO. 99-00660 SOM-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.I. du PONT DE NEMOURS AND COMPANY, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| MCCONNEL, INC., a CALIFORNIA CORPORATION, | ) ) | CIVIL NO. 00-00328 SOM-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.I. du PONT DE NEMOURS AND COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| ANTHURIUM ACRES, ET AL., | ) | CIVIL NO. 00-00615 SOM-LEK |

```
            Plaintiffs,        )
                               )
    vs.                        )
                               )
E.I. du PONT DE NEMOURS AND    )
COMPANY,                       )
                               )
            Defendant.         )
_____ )
                               )
                               )
```

**ORDER DENYING PLAINTIFFS' MOTION IN LIMINE FOR ISSUE PRECLUSION TO COLLATERALLY ESTOP DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY, INC. FROM DENYING OR RE-LITIGATING PREVIOUSLY ADJUDICATED FINDINGS OF FRAUD, DISCOVERY ABUSE AND INTENTIONAL WITHHOLDING OF THE ALTA AND BAM EVIDENCE IN THE KAWAMATA/TOMONO AND BUSH RANCH BENLATE CASES, FILED MARCH 13, 2006**

Before the Court is Plaintiffs' Motion in Limine for Issue Preclusion to Collaterally Estop Defendant E.I. Du Pont De Nemours and Company, Inc. from Denying or Re-Litigating Previously Adjudicated Findings of Fraud, Discovery Abuse and Intentional Withholding of the Alta and BAM Evidence in the Kawamata/Tomono and Bush Ranch Benlate Cases, filed March 13, 2006 ("Motion in Limine").  Defendant E.I. du Pont de Nemours and Company ("DuPont") filed its memorandum in opposition on April 3, 2006 and Plaintiffs David Matsuura, Individually and dba Orchid Isle Nursery, and Stephen Matsuura, Individually and dba Hawaiian Dendrobium Farm, Fuku-Bonsai, Inc. and David W. Fukumoto, Living Designs, Inc. and Plant Exchange, Inc., McConnell, Inc., Anthurium Acres and Mueller Horticultural Partners (collectively "Plaintiffs") filed their reply memorandum on April 10, 2006.

This matter came on for hearing on May 19, 2006. Appearing for Plaintiffs were Carl H. Osaki, Esq., A. Camden Lewis, Esq., Stephen T. Cox, Esq., Brady Thomas, Esq., and Kris A. LaGuire, Esq. Appearing for DuPont were Warren Price, III, Esq., Kenneth T. Okamoto, Esq., and Susan C. Wilson, Esq. After careful consideration of the motion, supporting and opposing memoranda, and the arguments of counsel, this Court DENIES the Motion in Limine for the reasons set forth below.

## BACKGROUND

The history of the consolidated cases is long and has been thoroughly described in Living Designs v. E.I. DuPont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005), cert. denied, 126 S. Ct. 2861 (2006). See also Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai`i 149, 73 P.3d 687 (2003). Plaintiffs are some of the commercial growers who filed lawsuits in 1992 and 1993 against DuPont, the manufacturer of a systemic fungicide, which was marketed under the name of Benlate, alleging that Benlate killed their plants ("Underlying Litigation") due to contamination with toxic herbicides known as sulfonylureas ("SUs"). Plaintiffs and DuPont settled the Underlying Litigation in 1994 ("1994 Settlement"). At the heart of the consolidated cases is Plaintiffs' allegation that DuPont "fraudulently withheld evidence of Benlate's contamination to induce Plaintiffs to settle their underlying Benlate litigation." Living Designs,

431 F.3d at 358.  The claims presently being litigated in the consolidated cases are: civil RICO claims, fraud, misrepresentation, and non-fraud claims.[1]

  **A.**  **Kawamata Farms Litigation**.

  Litigation involving Benlate has not been the exclusive pleasure of the federal court.  While Plaintiffs executed settlement agreements with DuPont, some of the other plaintiffs in the Underlying Litigation did not settle their claims.  These other plaintiffs include Kawamata Farms, Inc., as well as Stanley T. Tomono and Cynthia T. Tomono, owners and operators of S.T.T. Farms (collectively "Kawamata Farms plaintiffs").  See Kawamata Farms, Inc. v. United Agric. Prods., 86 Hawai`i 214, 222, 948 P.2d 1055, 1063 (1997).  In June 1994, the Kawamata Farms plaintiffs went to trial in state court and prevailed against DuPont.  See Exotics Hawaii-Kona, Inc. v. E.I. du Pont De Nemours & Co., 104 Hawai`i 358, 362, 90 P.3d 250, 254 (citing Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai`i 149, 151, 73 P.3d 687, 689 (2003)).  Moreover, the state trial court determined that DuPont had violated discovery rules, and issued substantial sanctions:

> In May 1994, DuPont finally produced the Alta test results to those plaintiffs who had not settled their cases.  Matsuura, 102 Hawai'i at 151, 73 P.3d at 689.  Because the Kawamata Farms

---

[1] Plaintiffs' negligence and spoliation claims have been dismissed.  See Living Designs, 431 F.3d at 371-72.

> plaintiffs had not settled, their lawsuit went to trial in June 1994. Id. During trial, the Kawamata Farms plaintiffs utilized the Alta test results to show that Benlate may have been contaminated with toxins. Id. Ultimately, the Kawamata Farms plaintiffs prevailed and were awarded nearly $10 million in compensatory damages and more than $14 million in punitive damages. Id. (citation omitted). In addition, because the circuit court found that DuPont had engaged in serious discovery violations, it imposed sanctions of $1.5 million payable to the State of Hawai'i. Id.
>
> Furthermore, after the verdict was entered, the Kawamata Farms plaintiffs learned of additional discovery violations, which they brought to the circuit court's attention via motion pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(3) (1995). Id. (citation omitted). In its HRCP Rule 60(b)(3) order, the circuit court found, inter alia, that some of "Du Pont's representations to this court . . . were false and misleading[ ]" and that "Du Pont intentionally withheld . . . crucial information in an effort to prevent the disclosure to the [Kawamata Farms] plaintiffs and this [c]ourt of Benlate and soil contamination data [(i.e., the Alta test results)] disclosed in said documents which goes to the heart of this case." Moreover, the court amended several orders that it had previously entered because such orders "were based on misleading, incomplete, inaccurate and false information[.]" The court then sanctioned DuPont by ordering it to pay for the Kawamata Farms plaintiffs' attorneys' fees and costs.

Id. (alterations in original). The verdict, as well as the state trial judge's rulings and sanctions imposed, were upheld on appeal. See Kawamata Farms, 86 Hawai'i at 243, 948 P.2d at 1085 (holding that the trial court's abuse of discretion was harmless error and upholding sanctions).

    **B.**    **Withheld Documents**.

1. **Alta Data**.

DuPont had hired ALTA Labs of California to conduct analytical tests to detect whether SUs were present in growers' soil. [Mem. in Supp. of Motion in Limine at 6.] In May 1994, the Kawamata Farms plaintiffs successfully forced DuPont to produce the test results which contained "certain raw test data (the "Alta data") that DuPont had not produced during the course of the . . . litigation. The Alta data included analytical findings which some experts would construe as evidence that Benlate 50 DF was contaminated with SUs." In re E.I. DuPont De Nemours & Company-Benlate Litig., 99 F.3d 363, 365-66 (11th Cir. 1996), cert. denied, 522 U.S. 906 (1997).

2. **BAM Documents**.

In June 1994, DuPont produced documents bearing DuPont bates number prefixes BAM, BAL and BPM in a Rule 30(b)(6) deposition ("BAM Documents") that contained "analytical tests conducted at the direction of DuPont on thousands of Benlate production 'lots' (each lot contained 2,000 pounds of product) between 1989 and 1991." [Mem. in Supp. of Motion in Limine at 19.] The Kawamata Farms plaintiffs filed a motion to add these documents to their trial exhibits, and the trial court found that "[t]here is no doubt that Defendant Du Pont did not include the BPM documents 31615 through 31641, the BAM documents, and the BAL documents, although it did state other documents in response to a

particular interrogatory." [Exh. D to Motion in Limine, Order Granting Plaintiffs' Motion for Rule 104 Hearing and Third Motion to Supplement Exhibit List, filed September 12, 1994, at 3, ¶ 3.] In addition, the trial court found that the omission was intentional. [Id. at ¶ 5.]

On December 30, 1994, additional documents regarding analytical testing were disclosed during a deposition of a DuPont witness. [Mem. in Supp. of Motion in Limine at 20.] Subsequently, the state trial court imposed the following punitive sanctions against DuPont: (1) a $1.5 million sanction "in order to deter this type of discovery abuse"; (2) an award of the attorney's fees and costs that the Kawamata Farms plaintiffs incurred as a result of the discovery abuse; (3) lifting the protective orders issued by the state trial court concerning confidentiality, except as to trade secrets; and (4) issuing a remedial jury instruction that a witness "was recalled in the Plaintiffs' case to testify regarding information, which was requested before trial by the Plaintiffs and withheld by Defendant Du Pont." [Exh. E to Motion in Limine, Order Imposing Punitive Sanctions Against Defendant E.I. du Pont de Nemours and Company, Inc., filed March 7, 1995, at 5-6.]

C.  **Bush Ranch Litigation**.

DuPont's production of the Alta Data to the Kawamata Farms plaintiffs created an impact on litigation elsewhere as

7

well.  The plaintiffs in four consolidated cases known collectively as the Bush Ranch Litigation commenced trial in federal court in 1993.  Before a verdict was reached, the Bush Ranch plaintiffs reached settlements with DuPont, and the Bush Ranch litigation was dismissed.  See In re E.I. DuPont De Nemours & Company-Benlate Litigation, 99 F.3d 363, 365 (11th Cir. 1996), cert. denied, 522 U.S. 906 (1997).  These plaintiffs subsequently learned of the Alta test results and returned to federal district court with a petition seeking sanctions and alleging intentional withholding of evidence and false representation.  The district court ordered that DuPont appear and show cause why sanctions should not be imposed.  After an evidentiary hearing, the district court ruled:

> On the basis of the evidence presented at the hearing, the district court issued an order finding that DuPont's failure to produce the Alta data had violated its discovery orders in the Bush Ranch litigation.  The district court specifically found that "DuPont deprived [the Appellees], the [district court], and the jury of data and documents highly relevant to the issue which DuPont itself described as the most critical issue in the case."  In re E.I. du Pont de Nemours & Co., 918 F.Supp. 1524, 1556 (M.D.Ga.1995).  The district court also found that DuPont's conduct was "willful, deliberate, conscious, purposeful, deceitful, and in bad faith;" that this deceitful conduct "affected the rulings and the orders of [the district court] and interfered with the administration of justice;" and that this discovery abuse rendered the trial, which had lasted approximately six weeks, "a farce."  Id.

Id. at 366 (alterations in original).  The district court's

contempt order was reversed on appeal and remanded for further proceedings. See id. at 369 ("Accordingly, even though DuPont and its counsel may very well have engaged in criminal acts, we must reverse the contempt order because the district court did not afford DuPont the procedural protections the Constitution requires for the imposition of criminal contempt sanctions.").

## **DISCUSSION**

In the instant motion, Plaintiffs seek to preclude DuPont from "denying or relitigating previously adjudicated findings of fraud, discovery abuse and intentional withholding of the ALTA and BAM evidence in the Kawamata/Tomono and Bush Ranch Benlate cases." [Mem. in Supp. of Motion in Limine at 1.] They argue that the doctrine of non-mutual offensive issue preclusion prevents DuPont from litigating at trial in the instant matter the following issues:

1. That DuPont fraudulently and intentionally withheld the ALTA documents from Benlate litigants, including Plaintiffs;

2. That DuPont intentionally withheld the BAM documents from Benlate litigants, including Plaintiffs; and

3. That the ALTA data included analytical findings which some experts would construe as evidence that Benlate was contaminated with SU herbicides.

[Id. at 2.] Plaintiffs further seek a jury instruction to confirm that these determinations have been conclusively established at trial. [Id. at 2-3.] DuPont, however, argues

9

that Hawai`i law prohibits the use of non-mutual offensive issue preclusion to establish elements of Plaintiffs' claims. In support, DuPont points to the state trial court's denial of "a virtually identical 'collateral estoppel' motion in the parallel state 'settlement fraud' case." [Mem. in Opp. at 1-2; Exh. 1 to Memo. in Opp.]

**A.   Applicable Law**.

The instant matter involves diversity jurisdiction, hence, for substantive law issues, state law must be applied. See Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) ("Under the rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (citation and quotation marks omitted)). Hawai`i law recognizes issue preclusion. See Dorrance v. Lee, 90 Hawai`i 143, 148, 976 P.2d 904, 909 (1999) (stating that issue preclusion prevents parties or their privies from relitigating any issue that was actually litigated and decided with finality in an earlier action). The elements for establishing issue preclusion or collateral estoppel are:

> We therefore hold that the doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom

>     collateral estoppel is asserted was a party or in
>     privity with a party to the prior adjudication
>     [hereinafter, the collateral estoppel test].

Id. at 149, 976 P.2d at 910.

As to the state court's rulings in the Kawamata Farms litigation, it is clear that the second and fourth elements for issue preclusion have been met. The jury verdict and the state trial court's rulings, including sanctions, were upheld on appeal and therefore satisfy the final judgment on the merits requirement, and DuPont is the same defendant in both the Kawamata Farms litigation and the instant lawsuit, which satisfies the privity requirement. See Kawamata Farms, Inc., 86 Hawai'i 214, 948 P.2d 1055.

With regard to the first element, that the issue decided in the prior adjudication is identical to the one presented in the action in question, and the fourth element, that the issue decided in the prior adjudication was essential to the final judgment, a close reading of the issues Plaintiffs seek to preclude DuPont from contesting is necessary to determine whether these elements are met.

Plaintiffs seek to have DuPont precluded from disputing the issues "[t]hat DuPont fraudulently and intentionally withheld the ALTA documents from Benlate litigants, including Plaintiffs" and "DuPont intentionally withheld the BAM documents from Benlate litigants, including Plaintiffs" based on the state court's

11

rulings in the Kawamata Farms litigation.[2]  [Mem. in Supp. of Motion in Limine at 1, 2.]  The state court made these rulings in the context of motions involving discovery abuses, sanctions, permission to add trial exhibits, and Rule 60(b)(3).  Here, Plaintiffs claim, among other things, fraud.  For fraud, Plaintiffs are required to present proof by "clear and convincing evidence" with respect to their fraud and fraud-related claims.  See Shoppe v. Gucci Am., Inc., 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000) (stating that a party alleging fraudulent misrepresentation must establish its elements by "clear and convincing evidence"); Kang v. Harrington, 59 Haw. 652, 656-57, 587 P.2d 285, 289 (1978) ("In dealing with written contracts, the standard of proof with respect to a showing of fraud is extremely high.  A written contract will be cancelled because of fraud only in a 'clear case and upon strong and convincing evidence.'" (citing Soares v. Freitas, 38 Haw. 64, 65, 66 (1948))).  There is

---

[2] Plaintiffs also seek to have DuPont precluded from contesting "[t]hat the ALTA data included analytical findings which some experts would construe as evidence that Benlate was contaminated with SU herbicides."  [Mem. in Supp. of Motion in Limine at 2.]  This finding appears in the circuit court's decision in the Bush Ranch litigation.  See In re E.I. DuPont De Nemours & Company-Benlate Litigation, 99 F.3d 363, 365-66 (11th Cir. 1996).  As the appellate court remanded the proceedings, there was no final judgment on the merits.  See, e.g., Pierce County, Wash. v. Guillen, 537 U.S. 129, 141 (2003) (In the tort action, "the Washington Supreme Court resolved only a discovery dispute; it did not determine the final outcome of the litigation.").  Likewise, any finding that the district court made in its contempt order do not have the requisite finality for issue preclusion/collateral estoppel purposes.

no requirement that the state trial court apply the "clear and convincing" standard when deciding the motions involving discovery abuses, sanctions, and permission to add trial exhibits, nor is there any indication that this standard was applied.  With different standards of proof being applied, it reasonably follows that these issues cannot be identical.

A motion pursuant to Rule 60(b) of the Hawai`i Rules of Civil Procedure, however, does require proof by clear and convincing evidence.  See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai`i 408, 431, 32 P.3d 52, 75 (2001) ("'[F]raud on the court under Rule 60(b) must be established by clear and convincing evidence[.]" (quoting Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989) (alterations in original))).  The issues of fraud, as alleged in the instant lawsuit, and of fraud on the court, as alleged in the Rule 60(b)(3) motion in the Kawamata Farms litigation are thus identical.

With regard to the third element, that the issue decided in the prior adjudication was essential to the final judgment, the Court finds that the state court's findings in its order granting Rule 60(b)(3) relief were not issues essential to the final judgment.  Rather, these findings pertained to matters collateral to the final judgment, such as payment of attorneys' fees and costs awarded as sanctions for DuPont's egregious misconduct, and reaffirmation of the $1.5 million in punitive

sanctions. [Exh. C to Mem. in Supp. of Motion in Limine at 60.] Said another way, if the motion for Rule 60(b)(3) relief had been denied, the final determination of the litigation would not have changed. The jury's verdict that DuPont is liable to the Kawamata Farm plaintiffs, and the award of damages determined by the jury were not affected by the granting of Rule 60(b)(3) relief. Insofar as none of the findings cited by Plaintiffs satisfies all four elements of the collateral estoppel test, this Court finds that the doctrine does not apply.

## **CONCLUSION**

After careful consideration of the submissions and pertinent case law, and for the foregoing reasons, Plaintiffs' Motion in Limine for Issue Preclusion to Collaterally Estop Defendant E.I. du Pont De Nemours and Company, Inc. from Denying or Re-Litigating Previously Adjudicated Findings of Fraud, Discovery Abuse and Intentional Withholding of the Alta and BAM Evidence in the Kawamata/Tomono and Bush Ranch Benlate Cases, filed March 13, 2006, is hereby DENIED.

**IT IS SO ORDERED.**

DATED AT HONOLULU, HAWAI`I, January 3, 2007.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**DAVID MATSUURA, ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY; FUKU-BONSAI, INC., ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL.; LIVING DESIGNS, INC., ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL; MCCONNEL INC. V. E.I. DU PONT DE NEMOURS AND COMPANY; ANTHURIUM ACRES, ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY**; CIVIL NOS. 96-01180; 97-00716; 99-00660; 00-00328 AND 00-00615 SOM-LEK; ORDER DENYING PLAINTIFFS' MOTION IN LIMINE FOR ISSUE PRECLUSION TO COLLATERALLY ESTOP DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY, INC. FROM DENYING OR RELITIGATING PREVIOUSLY ADJUDICATED FINDINGS OF FRAUD, DISCOVERY ABUSE AND INTENTIONAL WITHHOLDING OF THE ALTA AND BAM EVIDENCE IN THE KAWAMATA/TOMONO AND BUSH RANCH BENLATE CASES, FILED MARCH 13, 2006