IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID MATSUURA, ET AL., ) | CIVIL NO. 96-01180 SOM-LEK |
| ) | CIVIL NO. 97-00716 SOM-LEK |
| Plaintiffs, ) | CIVIL NO. 99-00660 SOM-LEK |
| ) | CIVIL NO. 00-00328 SOM-LEK |
| vs. ) | CIVIL NO. 00-00615 SOM-LEK |
| ) | **(FOR FILING IN ALL CASES)** |
| E.I. du PONT DE NEMOURS AND ) | |
| COMPANY, ) | ORDER DENYING DEFENDANT'S |
| ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. ) | BASED ON INABILITY TO PROVE |
| _____ ) | FACTS; ORDER DENYING |
| FUKU-BONSAI, INC., ET AL., ) | DEFENDANT'S MOTION FOR |
| ) | SUMMARY JUDGMENT AGAINST |
| Plaintiffs, ) | PLAINTIFF ANTHURIUM ACRES |
| ) | |
| vs. ) | |
| ) | |
| E.I. du PONT DE NEMOURS AND ) | |
| COMPANY, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| LIVING DESIGNS, INC., ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| E.I. du PONT DE NEMOURS AND ) | |
| COMPANY, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| MCCONNEL, INC., a CALIFORNIA ) | |
| CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| E.I. du PONT DE NEMOURS AND ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

```
ANTHURIUM ACRES, ET AL.,        )
                                )
        Plaintiffs,             )
                                )
    vs.                         )
                                )
E.I. du PONT DE NEMOURS AND     )
COMPANY,                        )
                                )
        Defendant.              )
_____ )
```

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON INABILITY TO PROVE FACTS; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ANTHURIUM ACRES

I.      INTRODUCTION.

On September 22, 2006, this court affirmed in part and reversed in part Magistrate Judge Leslie E. Kobayashi's July 11, 2006, and August 2, 2006, orders regarding various motions in limine.  On December 8, 2006, DuPont filed a "Motion for Summary Judgment Based Upon Plaintiffs' Inability to Prove the Fact of Fraud Damages."  This purported summary judgment motion is almost entirely an untimely motion for reconsideration of this court's September 22, 2006, order.  Accordingly, to the extent it seeks correction of the legal "errors" made in the September 22, 2006, order, the motion is denied.

To the extent DuPont seeks summary judgment because Plaintiffs allegedly lack evidence to support their damage claims, the motion is also denied.  Plaintiffs have expert testimony from which a jury can reasonably calculate Plaintiffs' damages, if any.

2

On December 8, 2006, DuPont filed another motion for summary judgment. This motion, filed only against Anthurium Acres, argues that Anthurium Acres did not use Benlate at all and, as a result, had no valid product liability claim against DuPont. DuPont therefore argues that Anthurium Acres' claims were worthless. Because the Ninth Circuit has ruled that Plaintiffs need not prove the underlying merits of their product liability claims in determining settlement fraud damages, and because DuPont did not rely on the evidence it submits in support of this motion when the case was settled, DuPont may not now litigate the merits of Anthurium Acres' product liability claims. The summary judgment motion against Anthurium Acres is also denied.

II.     ANALYSIS.

Most of DuPont's "Motion for Summary Judgment Based Upon Plaintiffs' Inability to Prove the Fact of Fraud Damages" ("Inability to Prove Fact Motion") discusses why DuPont believes this court committed "judicial errors" in its September 22, 2006, order. DuPont rehashes the arguments it made in the motions and appeals underlying the September 22, 2006, order. DuPont, for example, attempts to reargue whether Plaintiffs' damages should be calculated using only evidence available on the date of the settlement. DuPont made this argument on page 6 of its Motion in Limine No. 1 (March 13, 2006), and this court rejected the argument in its September 22, 2006, order. See Order Affirming

in Part and Reversing in Part Magistrate Judge Orders Dated July 11, 2006, and August 2, 2006 (Sept. 22, 2006) at 11-13.

Under Local Rule 60.1, a motion for reconsideration based on a manifest error of law "must be filed not more than ten (10) business days after the court's written order is filed." DuPont filed its Inability to Prove Fact Motion more than ten business days after this court's September 22, 2006, order. To the extent the Inability to Prove Fact Motion seeks reconsideration of the points of law discussed in this court's September 22, 2006, order, it is denied as untimely.[1] DuPont's complaints about statements made by Plaintiffs' counsel at the September 11, 2006, hearing underlying that order are similarly untimely. If DuPont believed that this court had been misled by statements of opposing counsel, DuPont should have timely moved for reconsideration of the order.

To the extent the Inability to Prove Fact Motion asks this court to reconsider the September 22, 2006, order that

---

[1]DuPont says that, in its September 22, 2006, order, this court miscited DiSabatino for the proposition that "Plaintiffs must establish DuPont's liability for settlement fraud, and then must present evidence of the amount they would have settled for." DuPont says that DiSabatino does not stand for that proposition. This court, however, did not cite DiSabatino for that proposition. Instead, the court cited Living Designs, 431 F.3d at 368, which clearly contemplates that, in determining damages for settlement fraud, the trier of fact must determine the probable amount of settlement in the absence of the fraud. As it is Plaintiffs' burden to prove settlement fraud damages, Plaintiffs must present evidence of the probable amount of settlement in the absence of the fraud.

4

allowed Dr. Constand, an economic expert, to calculate the present value of the damages sustained by Plaintiffs as a result of DuPont's fraud, the motion is also untimely under Local Rule 60.1.

In arguing in favor of its untimely motion for reconsideration, DuPont claims that Plaintiffs have taken inconsistent positions before this court. DuPont, for example, cites statements by Plaintiffs' counsel indicating that damages should be examined as of the date of the settlement agreement and that evidence regarding what happened after the settlement will not be presented by Plaintiffs. These statements were made in 2002, before the Ninth Circuit's decision in <u>Living Designs, Inc. v. E.I. DuPont de Nemours & Company</u>, 431 F.3d 353 (9th Cir. 2005). In <u>Living Designs</u>, the Ninth Circuit clarified the proper measure of Plaintiffs' damages for DuPont's alleged settlement fraud. Plaintiffs' counsel cannot be held to statements made in 2002, when the law of the case was not what it is now.

In the remainder of DuPont's Inability to Prove Fact Motion, DuPont argues that Plaintiffs lack evidence to prove fraud damages. This was an argument made to the Ninth Circuit in <u>Living Designs</u>. On appeal, the Ninth Circuit examined whether Judge Real had "erred in holding that DuPont was entitled to summary judgment under Hawai`i law because of Plaintiffs' inability to prove either the fact or amount of damages with reasonable certainty." <u>Id.</u> at 366 (quotations omitted). The

Ninth Circuit noted that, under Hawaii law, plaintiffs suing in fraud must "show both that they suffered actual pecuniary loss and that such damages are definite and ascertainable, rather than speculative." Id.  The Ninth Circuit reversed Judge Real's ruling that a settlement fraud plaintiff must prove that the settled claim had merit.  Id. at 367.  To determine damages for settlement fraud, the Ninth Circuit stated, the trier of fact should determine the probable amount of the various settlements "in the absence of fraud after considering all known or foreseeable facts and circumstances affecting the value of the claim on the date of settlement." Id. at 368.  The Ninth Circuit explained:

> To put it another way, the relative strength of the claim in the absence of fraud should be used by the trier of fact to determine the amount of the defrauded party's damages. Whether the defrauded party could have won its case if it proceeded to trial is irrelevant to this calculation.  The critical consideration is the settlement value of the case on the date settlement was reached. Such a determination is not beyond the power of a jury to determine.  The use of probability analysis, for example, in calculating settlement value is not uncommon.

Id. Based on evidence indicating that knowledge of the withheld evidence would have substantially increased the settlement value of the cases, including evidence of comparable settlements of larger amounts and expert testimony, the Ninth Circuit ruled that there was a genuine issue of fact as to whether Plaintiffs could prove damages.  In so ruling, the Ninth Circuit noted that such

6

damages were "not so speculative that damages are incapable of calculation." Id. at 368-69.

DuPont says that, for Plaintiffs to prove damages, they must demonstrate the relative strength of each of their claims in the absence of fraud. DuPont contends that this means that the jury must evaluate all evidence regarding the value of each Plaintiff's claim, even evidence that DuPont did not actually consider in evaluating the underlying product liability cases for settlement purposes. DuPont says that Plaintiffs' experts will only be testifying that, had the withheld discovery been known to Plaintiffs, the block settlement of the cases would have increased and would have increased each Plaintiff's share on a pro rata basis. According to DuPont, it is entitled to summary judgment because Plaintiffs lack evidence of the relative strength of their claims, as Plaintiffs' experts allegedly do not know the details each Plaintiff's situation. The court disagrees with DuPont's reading of Living Designs. The Ninth Circuit has already rejected DuPont's argument that it is entitled to summary judgment based on Plaintiffs' alleged inability to prove damages, and nothing in the record or in intervening law makes it appropriate to grant DuPont summary judgment now.[2]

---

[2]DuPont's citation of the Order Granting Defendant's Motion for Summary Judgment Based on Plaintiffs' Inability to Prove Damages in Exotics Hawaii-Kona, Inc. v. E.I. DuPont de Nemours and Company, Civil No. 97-103K, in the Third Circuit Court for the State of Hawaii, is not persuasive. The record before this
(continued...)

This court will not be trying the merits of the underlying product liability cases. In Living Designs, the Ninth Circuit expressly ruled that Plaintiffs need not demonstrate that their product liability claims had merit. 431 F.3d at 367. Assuming that DuPont committed settlement fraud, Plaintiffs' expert testimony indicating that the block settlement of the cases would have increased had the data been known and would have increased each Plaintiff's share on a pro rata basis is sufficient evidence to create a triable issue of fact as to damages. Even if Plaintiffs' experts do not know all of the factors going to the merits of each Plaintiff's product liability claim, that does not mean Plaintiffs lack evidence supporting damages. Nor does it mean that Plaintiffs' evidence and theory of damages is so "speculative that damages are incapable of calculation." Living Designs, 431 F.3d at 369 (indicating that evidence of comparable settlements of much larger amounts and

---

[2](...continued)
court does not indicate that the state court judge granted DuPont summary judgment in the face of expert testimony that Exotics Hawaii-Kona had settled its case as part of a block of cases. Nor does this court's record contain any suggestion that the state judge was aware at the time of his ruling that, had the withheld evidence been known, the settlement value of the block of cases may have increased, thereby possibly increasing Exotics Hawaii-Kona's pro rata share of the block settlement. In fact, no detail has been submitted to this court regarding what evidence was before the state court judge. This court cannot tell, for example, whether the state court judge relied on Judge Real's subsequently reversed order in granting DuPont summary judgment. This court cannot even tell whether there was any expert testimony at all submitted in the state court case.

expert testimony provide evidence from which a jury could properly determine damages).

DuPont misinterprets the Ninth Circuit's use of the words "relative strength" in describing damages.  In DuPont's view, the jury must examine all facts and circumstances affecting each Plaintiff's claims to assess the probable settlement value of each Plaintiff's case, even facts and circumstances not actually considered when the parties settled the product liability cases.  In its summary judgment motion with respect to Anthurium Acres, DuPont therefore asks this court to determine as a matter of law that Anthurium Acres could not have proved the causation element of its product liability claim.  The problem with this argument is that it ignores the Ninth Circuit's ruling that Plaintiffs need not prove the merits of their product liability cases.  As <u>Living Designs</u> recognized, a "decision to settle is often made as a result of a cost-benefit analysis rather than an assessment of the claim's merits."  431 F.3d at 367.

This court noted in the September 22, 2006, order that damages should be calculated to make the settlements honest ones.  That is, if DuPont is found to have fraudulently caused Plaintiffs to settle their product liability claims, the jury should determine how that fraud affected the settlement amount.  The jury is to assume that the settlements reached were reasonable, and then, based on the then-existing evidence in

9

combination with foreseeable facts and circumstances that would have flowed from a proper disclosure of the evidence, the jury is to determine what the probable amount of the settlement would have been had DuPont not committed the alleged fraud.

When the Ninth Circuit discussed the "relative strength" of the claim in <u>Living Designs</u>, it was referring to whether and how much a Plaintiff's claim would have improved if the alleged fraud had not occurred.  The Ninth Circuit's intent is clear from its instruction that the probable amount of the settlement be determined in the "absence of fraud."  The only way to do this is for the jury to examine the factors actually examined by the parties in determining whether to settle, and then to assess the impact of the alleged fraud on the settlement.  The evidence submitted by DuPont in support of its Anthurium Acres motion (two 2002 depositions) indicates that, at the time of the settlement, DuPont was unaware of the problems Anthurium Acres might have in proving causation.  DuPont cannot now rely on this evidence to demonstrate what the probable settlement would have been had DuPont not committed the fraud.  To allow DuPont to rely on subsequently discovered evidence would allow DuPont to potentially benefit from the fraud it allegedly committed.  DuPont's summary judgment motion against Anthurium Acres must be denied.[3]

---

[3]In any event, a genuine issue of fact exists as to whether
(continued...)

In these cases, there is no dispute that Plaintiffs' underlying product liability claims were settled as part of a block settlement. At the hearing, DuPont admitted that, other than doing minimal due diligence, it did not evaluate each claim. Given the block settlement, the relative strength of each Plaintiff's claim should first be assessed based on the impact the fraud had on the block settlement. In other words, because 220 cases were globally settled, and because the details of each of those 220 cases were not actually examined by Dupont in settling the cases, evidence should initially be examined on the "global" level in reviewing the effect of the alleged fraud. No microscopic examination of the details of any case is required to determine the effect of the fraud on the global settlement amount.

DuPont's contention that the jury should automatically evaluate every fact and circumstance in determining the probable settlement amount in the absence of the fraud is not supported by Living Designs. DuPont's motion for summary judgment with respect to Anthurium Acres starkly illustrates the problem with DuPont's contention. Relying on deposition testimony taken approximately eight years after the underlying product liability

---

³(...continued)
Anthurium Acres applied Benlate to its plants. See, e.g., Letter from Anthurium Acres, formally known as Island Tropicals, to Jack Cain, DuPont AG Products (Dec. 6, 1991) (indicating that Island Tropicals had applied Benlate to its plants).

11

case was settled, DuPont argues that Anthurium Acres did not use Benlate on its crops and that this court should find as a matter of law that the probable amount of the settlement in the absence of the fraud is zero. In other words, DuPont argues that, even assuming that it committed fraud, the fraud did not increase the relative strength of Anthurium Acres' claims, as Anthurium Acres had no valid claims to begin with. The problem with this argument is that DuPont made a business decision to settle Anthurium Acres' claims without specifically evaluating those claims. Because Anthurium Acre's ability to prove the causation element of its product liability claims was not a factor that affected DuPont's evaluation of settlement of the underlying claims, whether Anthurium Acres could have proved that causation has no relevance to what, if any, impact the fraud had on the global settlement. See Living Designs, 431 F.3d at 367. The court starts with the presumption that the settlements were reasonable and looks to how the alleged fraud might have affected the settlements.

   The jury's determination of the effect of the withheld data on the global settlement will set a ceiling on damages. However, it is not the end of the damage discussion. It may be useful to the parties for this court to set forth its view of how damages should be determined at trial. For that reason, the court states its position that, if the jury determines that the global settlement would have been greater had the withheld

12

information been known, the jury must then determine what each Plaintiff's share of any additional settlement would be. That can only be done if the parties present evidence to that effect. Plaintiffs may try to meet their burden by introducing evidence, for example, that Kevin Malone would have simply taken any additional settlement amount and divided it on the pro rata basis reflected in the original settlements. That is, if "Plaintiff X" received 2.6% of the total global settlement, "Plaintiff X" might arguably satisfy its burden in this case with evidence (by Malone or others) that "Plaintiff X" would have received 2.6% of any additional settlement amount. In that event, evidence of what, say, Malone knew at the time of the global settlement would be relevant to evaluating his credibility with respect to how any additional settlement would have been divided. For example, if Malone knew that Anthurium Acres would have had difficulty in proving causation at trial, it may be that Malone would not have apportioned any additional settlement amount to Anthurium Acres or would have apportioned less than its pro rata share to it. Accordingly, although DuPont may not try the merits of the underlying product liability cases, if it can demonstrate that certain evidence was relevant to the parties in evaluating the settlement amount, DuPont may introduce that evidence at trial to argue that its alleged fraud had no or little effect on the

actual settlement any Plaintiff would have received in the absence of DuPont's alleged fraud.

Because the goal in these cases is to fashion honest settlements, and because the 220 cases were settled in a block, no party may litigate the merits of any underlying product liability claim in any one case without showing that it or another party considered those merits in determining how much to settle for.  The parties may only argue that the relative strength of Plaintiffs' claims would have stayed the same or increased by some amount had the alleged fraud not occurred.  The parties may not argue that Plaintiffs would have settled for less had the fraud been known.

Damage evidence at trial will be limited to (1) facts or circumstances actually known and considered in settling the product liability actions; and (2) foreseeable facts and circumstances that would have resulted from the disclosure of the withheld evidence.  This means that Plaintiffs may argue that, because the underlying cases were settled in a block and because DuPont did not individually evaluate each claim, the jury need only figure out the effect of the alleged fraud on the block settlement, as that is the circumstance under which the cases were settled.  This argument will, of course, be open to challenge.  Once the effect of the alleged fraud on the block settlement is determined, the jury must apportion Plaintiffs'

14

shares to determine the probable amount of each Plaintiff's settlement in the absence of DuPont's alleged fraud. Again, Plaintiffs' evidence as to apportionment will be subject to challenge.

      Unless a party provides an offer of proof or evidence indicating that a particular fact or circumstance was relevant to a party's decision to settle, evidence may not be introduced indicating that a particular Plaintiff's claim was strong or weak. What a party could have considered but chose not to consider in settling the claims is not relevant to determining the probable amount of the settlements had there been no fraud. Of course, the parties may present evidence relevant to the effect DuPont's alleged fraud had on facts and circumstances affecting the value of the claims on the date of settlement.

III.     CONCLUSION.

For the foregoing reasons, the two motions for summary judgment filed by DuPont on December 8, 2006, are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii; February 16, 2007.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

DAVID MATSUURA, ET AL. v. E.I. DU PONT DE NEMOURS AND COMPANY; FUKU-BONSAI, INC., ET AL. v. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL.; LIVING DESIGNS, INC., ET AL. v. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL; MCCONNEL INC. v. E.I. DU PONT DE NEMOURS AND COMPANY; ANTHURIUM ACRES, ET AL. v. E.I. DU PONT DE NEMOURS AND COMPANY; CIVIL NOS. 96-01180; 97-00716; 99-00660; 00-00328 and 00-00615 SOM-LEK: ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON INABILITY TO PROVE FACTS; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ANTHURIUM ACRES